**ALEXANDER KRAKOW + GLICK LLP**
Marvin E. Krakow (SB No. 81228)
Michael S. Morrison (SB No. 205320)
401 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
T: 310 394 0888 | F: 310 394 0811
E: mkrakow@akgllp.com; mmorrison@akgllp.com

HURWITZ, ORIHUELA & HAYES, LLP
Cory H. Hurwitz (Bar No. 222026)
   chh@hohlawyers.com
Douglas B. Hayes (Bar No. 232709)
   dbh@hohlawyers.com
10 Universal City Plaza, 20th Floor
Universal City, CA 91608

Attorneys for Plaintiff LYNN ODRICK individually,
on behalf of all others similarly situated, and the general public

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| LYNN ODRICK, an individual, on behalf of all others similarly situated and the general public,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNIONBANCAL CORPORATION, a Corporation, UNION BANK, N.A., a corporation, and DOES 1-10<br><br>        Defendants. | Case No. CV 10 5565 SBA<br><br>Assigned to the Hon. Saundra Brown Armstrong<br>Filed: December 8, 2010<br>Courtroom 1<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 29, 2012<br>Time: 1:00 pm<br>Courtroom: 1 |

*(left margin, vertical text)* ALEXANDER KRAKOW + GLICK LLP

0

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2012 at 1:00 pm, or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Division, Courtroom 1, Plaintiff Lynn Odrick, on behalf of herself, the general public, and all others similarly situated ("Representative Plaintiff"), as proposed representative of the class Plaintiff requests be provisionally certified for settlement purposes, will and hereby do move this Court for the following:

1.      Preliminarily and conditionally certifying the Class as described in the proposed Settlement Agreement and Joint Stipulation Between Plaintiff and Defendants ("Settlement Agreement") for purposes of settlement;

2.      Provisionally approving the Representative Plaintiff as the Class Representative;

3.      Provisionally approving Alexander Krakow + Glick LLP and Hurwitz, Orihuela & Hayes LLP as Class Counsel;

4.      Preliminarily approving a non-reversionary settlement of $3,500,000 (three-million, five-hundred thousand dollars) under the terms set forth in the Settlement Agreement (attached to Declaration of Michael Morrison as Exhibit "A");

5.      Approving as to form and content the proposed Class Notice, Exclusion Form, and FLSA Consent Form, attached as Exhibits 1 to 3 to the Settlement Agreement, respectively;

6.      Approving the method of Notice described in the Settlement Agreement and directing distribution of the Class Notice, Exclusion Form, and FLSA Consent Form be mailed by first class mail to the Class members;

7.      Approving the appointment of Simpluris, Inc., as Claims Administrator and preliminarily approving costs of administration of the Settlement for an amount estimated to be approximately $11,000.

8.      Preliminarily approving the payment of an "enhancement award" in the amount of $25,000 to the Representative Plaintiff Lynn Odrick;

1

9. Preliminarily approving the application for payment to Class Counsel of reasonable attorneys' fees and costs of one-million, fifty-thousand dollars ($1,050,000) (30% of the Settlement);

10. Preliminarily approving reimbursement of Class Counsel's costs, currently at a balance of approximately $20,000 from the Settlement (currently $19,355.90); and

11. Setting a schedule for implementation of the terms of the Settlement Agreement, including a date for a hearing for Final Approval of the Settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Michael Morrison in Support, along with the attached Settlement Agreement and Exhibits thereto, the proposed Order submitted herewith, all other records, pleadings, and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

DATED: April 20th, 2012          ALEXANDER KRAKOW + GLICK LLP

By:    /s/ Michael Morrison

Michael S. Morrison
Attorney for Plaintiff,
LYNN ODRICK individually, on behalf of
all others similarly situated, and the
general public.

ALEXANDER KRAKOW + GLICK LLP

ALEXANDER KRAKOW + GLICK LLP

## I.   INTRODUCTION

Plaintiff Lynn Odrick seeks preliminary approval of class action/collective action settlement brought on behalf of 136 employees of UnionBancal Corporation and Union Bank, N.A. ("Union Bank" or "Defendants") who are responsible for administering trusts. During a time period when class certification is routinely being denied by courts as to misclassification claims, Plaintiff was successful in creating a non-reversionary settlement fund in the amount of **$3,500,000.**  The average pay-out to class members after deducting the requested attorneys fees, costs, claims administration expenses, and the class representative enhancement is **$17,602.92** (assuming each class member consents to join the lawsuit).  A settlement which provides for such significant economic benefits to class members given the uncertainties of prevailing on class certification and merits issues should readily be approved by this Court.

Indeed, Defendants have a number of potentially viable defenses in this action. With respect to class certification and collective action treatment, Defendants have argued that class members are not similarly situated because they work in different departments, hold different job titles, and service unique and different kinds of trusts. Concerning the merits, Defendants contend that class members are properly classified as being exempt from state and federal overtime laws because they service Defendants' financial products and exercise independent judgment and discretion on matters of significance.  In light of recent Ninth Circuit case law which demonstrates the difficulty of certifying and prevailing on misclassification claims, the result here is truly excellent.

The settlement in this case was achieved as a result of arms-length, non-collusive negotiations presided over by a well-respected mediator and between counsel with a wealth of experience in class action cases.  The Maximum Payment amount was proposed by the mediator, which further supports the conclusion that the settlement is fair, reasonable, and adequate.

Accordingly, Plaintiff requests that the Court grant preliminary approval of the proposed Settlement, provisionally approve and certify a settlement class, order the

1  distribution of the Class Notice, Exclusion Form, FLSA Consent Form, and schedule a

2  final approval hearing.

3  **II.    PROCEDURAL HISTORY**

4          On December 8, 2010, Plaintiff Lynn Odrick filed a class action and collective

5  action lawsuit against Defendants alleging various violations of California and federal

6  wage and hour laws. Plaintiff's complaint alleged that Defendants: (1) failed to pay

7  required overtime and preserve accurate time records (FLSA 29 U.S.C. section 201, et.

8  seq.); (2) failed to pay overtime compensation (Cal. Labor Code section 1194); (3) failed

9  to pay all wages due upon termination or resignation (Cal. Labor Code section 203); (4)

10  failed to pay all wages due by the appropriate pay period (Cal. Labor Code section 204);

11  (5) provided inaccurate wage statements (Cal. Labor Code section 226); and (6)

12  committed unfair business practices (Cal. Business and Professions Code section

13  17200, et seq.).  Plaintiff's complaint sought to recover the wages owed to class

14  members, and applicable statutory penalties as well as civil penalties recoverable under

15  the Private Attorney General Act (Cal. Labor Code section 2699). Declaration of Michael

16  Morrison ("Morrison Decl."), ¶ 8.

17          For the FLSA collective action, the proposed class was defined as follows:

18          All misclassified employees of Defendants who performed similar job duties
        as the Plaintiff and held at least one of the following job titles, including but
19          not limited to: Business Trust Administrator I, Trust Administrator II, Sr.
        Business Trust Administrator, Sr. Trust Administrator Inst., Sr. Trust
20          Administrator – Taft Hartley, Personal Trust Associate III, Personal Trust
        Administrator II, Personal Trust Administrator III, Personal Trust
21          Administrator IV, Relationship Manager I – IS, Relationship Manager II –
        IS, Relationship Manager III – IS; and Senior Relationship Manger I – IS,
22          from December 2007 and thereafter.

23  For the California state claims, the class was defined as follows:

24          All California based misclassified employees of Defendants who performed
        similar job duties as the Plaintiff and held at least one of the following job
25          titles, including, but not limited to: Business Trust Administrator I, Trust
        Administrator II, Sr. Business Trust Administrator, Sr. Trust Administrator
26          Inst., Sr. Trust Administrator – Taft Hartley, Personal Trust Associate III,
        Personal Trust Administrator II, Personal Trust Administrator III, Personal
27          Trust Administrator IV, Relationship Manager I – IS, Relationship Manager
        II – IS, Relationship Manager III – IS; and Senior Relationship Manger I –
28          IS, from December 2006 and thereafter.

ALEXANDER KRAKOW + GLICK LLP

4

1  Morrison Decl., ¶ 9.

2  After the complaint was filed, Class Counsel conducted an in-depth investigation
3  regarding the suitability of the named Plaintiff's claims for class treatment; the adequacy
4  of the named Plaintiff to represent the proposed Class; other class certification
5  requirements; the merits of the liability issues; and the amount of damages owed to class
6  members. Class Counsel's investigation consisted of: (1) interviewing numerous class
7  members; (2) sending out a survey to each Class Member asking them to provide
8  pertinent information about: (a) the number of hours they worked in a week, including
9  any and all overtime hours, (b) their job duties, and (c) the amount of time they spent on
10 each job duty; (3) reviewing a statistically significant sample of payroll records; (4) hiring
11 a forensic accountant to review and analyze the surveys completed by class members
12 and other payroll information provided by Defendants, including the aforementioned
13 payroll records; (5) reviewing Defendants' operating manuals and job descriptions; and
14 (6) thoroughly researching and reviewing case law and authority regarding Defendants'
15 exemption defenses. Morrison Decl., ¶ 10.

16 Armed with this information, the parties participated in a full-day mediation before
17 a well-respected class action mediator, Jeffrey Ross, in September, 2011. At the
18 conclusion of the mediation session, Mr. Ross proposed the Maximum Payment as part
19 of a mediator's proposal. On October 17, 2011, the parties accepted the mediator's
20 proposal. In January, 2012, the parties executed a Memorandum of Understanding
21 which memorialized the key points of the settlement. Morrison Decl., ¶ 11.

22 **III.** **SUMMARY OF THE SETTLEMENT AGREEMENT**

23 **A.** **Summary of Monetary Terms**

24 Under the Settlement Agreement, Defendants will pay up to three-million, five-
25 hundred thousand dollars ($3,500,000) for: (1) the claims of all Settlement Class
26 Members for wages, penalties and interest, as specified herein; (2) all claims for an
27 award of the attorneys' fees, costs and expenses of all Plaintiffs's Attorneys or counsel
28 for the Settlement Class; (3) any Class Representative Enhancement awarded by the

ALEXANDER KRAKOW + GLICK LLP

5

Court; and (4) all costs associated with Notice, Opt-Outs, Opt-Ins, and administration of the Class.

**B.    Allocation and Distribution of Settlement**

The Settlement funds will be allocated as follows:

1.    This is a non-reversionary settlement.   After deductions of $1,050,000 for attorneys' fees, approximately $20,000 in litigation costs, $25,000 for the service payment to the Class Representative, an estimated $11,000 to pay for the services of the Claims Administrator, the remainder of the Maximum Payment shall be approximately **$2,394,000.00** (the "Remainder").

The Remainder shall be distributed as follows:

The calculation of class members' share of the settlements is designed to take into account additional claims alleged under California law by providing State Class members with an enhanced payment amount per workweek.

The class member distribution will be calculated as follows:

(1) For each member of the State Class, the State Class Member will receive one-half (1/2) Settlement Share Unit for each week (or portion of a week) worked while employed by Defendants in a covered position from December 8, 2006 to the date of preliminary approval, on account of alleged California law claims.  The crediting of this 1/2 Settlement Share Unit is automatic and does not require the State Class Member to submit a FLSA Consent Form.

(2) For each member of the State Class, the State Class Member will receive one (1) additional Settlement Share Unit for each week (or portion of a week) worked while employed by Defendants in a covered position from December 8, 2007 to the date of preliminary approval, on account of alleged Fair Labor Standards Act claims. To receive credit for these additional Settlement Share Units, the State Class Member must complete an FLSA Consent Form and opt in to the FLSA portion of the settlement.

(3)  For each member of the National Class, the National Class Member will receive one (1) Settlement Share Unit for each week (or portion of a week) worked

ALEXANDER KRAKOW + GLICK LLP

while employed by Defendants in a covered position from December 8, 2007 to the date of preliminary approval, on account of alleged Fair Labor Standards Act claims. To receive credit for any Settlement Share Units, the National Class Member must complete an FLSA Consent Form and opt in to the FLSA portion of the settlement.

(4) Each Class Member's Individual Distribution Amount will be calculated by: (a) summing the total number of Settlement Share Units for which all members of the State and National Class have claimed; (b) dividing the Class Member's individual Settlement Share Units awarded by the total number of Settlement Share Units which have been claimed by members of the State and National Class, to calculate that Class Member's "Proportional Share" of the Remainder settlement fund; and (c) multiplying the Class Member's "Proportional Share" by the Remainder amount to determine the Class Member's individual payment amount.

### C.   Limited Scope of the Release as to Class Members' Claims

The release of Class Members' claims is limited in scope to "any and all wage-and-hour claims" that "relate to or arise from those asserted in the operative Complaint and in the Amended Complaint or could have been asserted in the Operative Complaint." This is consistent with case law. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460  (2d Cir.1982); see also 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 12:15 (4th ed. 2002), at 312 ["2 Newberg"] ("The scope of a judgment must be limited to the claims that were asserted or that may arise out of the transactions or events pleaded in the complaint...."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 326 (3d Cir.1998); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir.1981).

### IV.   THE CLASS SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

At preliminary approval, the court's task is to "determine whether the proposed settlement is within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (internal quotations omitted). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair,

ALEXANDER KRAKOW + GLICK LLP

1
2
3
4

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Here, the proposed settlement is manifestly reasonable because it bestows upon class members significant economic benefits with respect to highly contested claims.  It should be approved by the District Court.

5
6
7
8
9
10
11
12
13
14
15

The Ninth Circuit, in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), sets forth the following factors for a district court to consider in determining the fairness of a settlement approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of the counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Accord Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  Reviewing these factors at the preliminary approval stage shows the proposed Settlement is "fundamentally fair, adequate, and reasonable," and that it meets the relevant *Hanlon* factors.

16
17

**A.     The Relief Offered in Settlement Compared to the Strength of Plaintiff's Case and the Risk of Further Litigation.**

18
19
20
21
22

"Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement . . . They do not decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14, (1981) (internal citation omitted).

23
24
25
26
27
28

While Plaintiff believes in the strength of her case, she is mindful of the fact that Defendants have a number of defenses to class certification and merits issues.  With respect to class certification, Defendants argue that Plaintiff will not be able to demonstrate the requirements for class certification as set forth in Fed. R. Civ. Proc. R. 23(a) and (b)(3). In particular, Defendants argue that Plaintiffs will not be able to demonstrate the commonality requirement of Rule 23(a)(2) and the predominance

ALEXANDER KRAKOW + GLICK LLP

8

1   requirement of Rule 23(b)(3) because class members worked in different departments

2   for Union Bank, administered unique and different types of trusts, and performed

3   different job duties.  These facts, if proven, could be sufficient to defeat class certification

4   based on recent Ninth Circuit authority.   *See, e.g., Marlo v. United Parcel Service, Inc.*,

5   639 F.3d 942 (9th Cir. 2011).  Overall, *Marlo* demonstrates the hurdles and difficulties

6   plaintiffs seeking to certify misclassification cases in federal court face.   Morrison Decl.,

7   ¶ 18.

8        With respect to the merits of Plaintiff's case, Defendants contend that their

9   employees who administer trusts "service" Defendants' financial products within the

10   meaning of 29 C.F.R. section 541.203(b), which provides examples of exempt

11   administrative activities.   In addition, Defendants contend that class members exercise a

12   great deal of discretion and independent judgment on matters of significance as well as

13   act as liaisons between Union Bank and its clients.  Morrison Decl., ¶ 19.

14        Despite these defenses, and the fact that misclassification class actions have had

15   a difficult time being certified following Ninth Circuit decisions like *Vinole v. Countrywide*

16   *Home Loans*, Inc., 571 F.3d 935 (9th Cir. 2009), *In re Wells Fargo Home Mortg.*

17   *Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009), and *Marlo*, Plaintiff was able to

18   obtain a non-reversionary settlement where the average payment if all class members

19   elect to join the case is **$17,602.92**.  This case is an example of a settlement that

20   provides real and substantial benefits to class members.  Morrison Decl., ¶ 20.

21   **B.**   **The Settlement Is Fair, Adequate, and Reasonable Given the Extent of**

22        **Discovery Conducted and the Information Obtained**.

23        Although this action resolved relatively early in the litigation, Plaintiff performed a

24   substantial amount of work in order to investigate the claims, establish a reasonable

25   settlement value, and prepare the case for mediation.  This work included:

26        (1)   Preparing and serving written discovery;

27        (2)   Reviewing thousands of pages of documents;

28        (3)   Interviewing scores of class members about issues relevant to class

ALEXANDER KRAKOW + GLICK LLP

9

ALEXANDER KRAKOW + GLICK LLP

certification, merits, and damages issues;

(4)    Sending out surveys to class members asking them to provide pertinent information about: (a) the number of hours they worked in a week, including any and all overtime hours; (b) their job duties; and (c) the amount of time they spent on each job duty;

(5)    Reviewing payroll information of class members;

(6)    Hiring a statistician to review the surveys provided by class members and the payroll information provided by Defendants in order to calculate the total wages and penalties owed to class members;

(7)    Doing extensive research on the applicable law with respect to class certification, merits and damages issues as well as Defendants' exemption defenses; and

(8)    Preparing an extremely detailed and lengthy mediation brief.

Morrison Decl., ¶¶ 10, 12.

Accordingly, by the time of settlement, Plaintiff had a wealth of information upon which to make an informed decision about the appropriate relief necessary to settle this case. Morrison Decl., ¶ 13.

**C.    Counsel Believe That This Is An Exceptional Settlement.**

The Ninth Circuit has recognized that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Class settlements reached in arms-length negotiations between experienced, capable counsels after meaningful discovery are presumed correct. Manual for Complex Litigation, §30.42 (3rd ed. 1995).

In this case, Plaintiff and the proposed settlement Class are represented by counsel which are highly experienced in wage and hour and other class action litigation as well as labor and employment law. See Morrison Decl., ¶¶ 3-6. Defendants are also represented by Seyfarth Shaw, LLP, a firm which has significant experience in class

ALEXANDER KRAKOW + GLICK LLP

1   action defense as related to matters arising under state and federal wage and hour laws.

2   Furthermore, the Parties have negotiated an arms-length settlement in a cordial, yet

3   adversarial manner.  Morrison Decl., ¶ 14.

4       Specifically, in anticipation of the mediation with respected mediator Jeffrey Ross,

5   both parties submitted comprehensive mediation briefs extensively detailing their legal

6   and factual support.  Additionally, as part of her mediation brief, Plaintiff submitted

7   numerous exhibits and other documents to the mediator regarding the claims in the

8   case.  At the mediation, the parties had an opportunity to learn the legal and factual

9   strengths and weaknesses of their respective cases.  The case settled approximately

10  one month after the mediation when the parties accepted the mediator's proposal. The

11  agreed-upon settlement reflects the realities of each side's case and the information

12  obtained during the discovery process, as described in Section B, above.  The proposed

13  settlement is the result of extensive, informed, arms-length negotiations between counsel

14  with substantial litigation experience, who are fully familiar with the legal and factual

15  issues in this case, and who have specific experience litigating and settling complex and

16  class action cases, including wage and hour class actions.  Morrison Decl., ¶¶ 15-16.

17      Accordingly, Counsel for both parties believes the settlement is eminently fair and

18  reasonable, and the experience of counsel, and the nature and quality of their

19  negotiations, weigh greatly in favor of the District Court's approval.

20  **D.      The Payment to the Named Plaintiffs For Their Services to the Class Is**

21  **Reasonable and Routinely Awarded by Courts.**

22      The Class Representative seeks an enhancement award of $25,000.  Plaintiff's

23  Counsel is of the opinion that the enhancement award is reasonable and proper and

24  supported by the particular circumstances of this case and the applicable case law.

25  Defendants do not oppose this request.

26      Courts have long acknowledged that active litigants are entitled to be

27  compensated for bearing the risk and time to represent others. *Lo Re v. Chase*

28  *Manhattan Corp.,* 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979).  Where class

11

1  representatives are provided with special compensation as part of a class settlement, the

2  Court should ensure that it is fair and reasonable. However, "[i]t is the complete

3  package, taken as a whole, rather than the individual component parts, that must be

4  examined." *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d

5  615, 628 (9th Cir. 1982).

6       Indeed, incentive awards "are not uncommon and can serve an important function

7  in promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc.*,

8  U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, at *16 (S.D.N.Y.

9  Aug. 1, 2002); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) (noting

10 that class representatives frequently receive substantial incentive payments); *In re*

11 *Southern Ohio Correctional Facility*,175 F.R.D. 270, 272 (S.D. Ohio 1997) ("[c]ourts

12 routinely approve incentive awards to compensate named plaintiffs for the services they

13 provided and the risks they incurred during the course of the class action litigation", *and*

14 *cases cited therein*).

15      The modest service payments to the named Plaintiff is intended to recognize her

16 time and efforts on behalf of the Class. "Courts routinely approve incentive awards to

17 compensate named plaintiffs for the services they provide and the risks they incurred

18 during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200

19 F.R.D. 685, 694 (N.D. Ga. 2001); *see also Complex Manual* § 30.42 n.763 (noting that

20 such awards "may sometimes be warranted for time spent meeting with class members

21 or responding to discovery"). In the *Coca-Cola* case, the Court approved incentive

22 awards of $300,000 to each named plaintiff in recognition of the services they provided

23 to the class by responding to discovery, participating in the mediation process and taking

24 the risk of stepping forward on behalf of the class. (200 F.R.D. at 694; *see also Van*

25 *Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (approving $50,000

26 participation award).

27      The enhancement award being sought here is justified. In the opinion of Counsel,

28 the Representative Plaintiff is precisely the type of individual one would want to

ALEXANDER KRAKOW + GLICK LLP

12

ALEXANDER KRAKOW + GLICK LLP

represent a class.    First, the Plaintiff was the only class representative in this action.
Declaration of Lynn Odrick "Odrick Decl."), ¶ 5.  The Representative Plaintiff was a
current employee of Defendants when this lawsuit arose.  Despite her fears of retaliation,
she came forward in order to vindicate the rights of other class members.  Odrick Decl.,
¶ 5.  She also decided against pursuing unrelated individual claims against Union Bank
in order to better serve as a class representative.  Odrick Decl., ¶ 7.

Second, even prior to the initiation of this lawsuit, the Representative Plaintiff was
in constant communication with her counsel about issues related to the case. The
Representative Plaintiff was invaluable in providing information about Defendants' payroll
practices, the nature of Defendants' business operations and organizational structure,
and the duties of class members.  The Representative Plaintiff provided Plaintiff's
Counsel with hundreds of pages of valuable documents that was extensively relied upon
to resolve the litigation.  Odrick Decl., ¶ 8; Morrison Decl., ¶¶ 21-22.

In addition, the Representative Plaintiff was in frequent communication with Class
Members throughout the litigation, encouraging them to participate in the lawsuit and
speak with Plaintiff's counsel.  Odrick Decl., ¶¶ 9-11. The Representative Plaintiff also
sat for deposition.  Furthermore, she attended the mediation in San Francisco and was
helpful in answering questions that arose.  Odrick Decl., ¶¶ 12; Morrison Decl., ¶ 23.

Finally, the enhancement payment is a similar to the amount many class
members will receive under the settlement.  Morrison Decl., ¶ 25.  Each of the above
factors support the conclusion that the enhancement should be approved.

E.     **The Requested Awards for Class Counsel's Attorneys' Fees and**
       **Costs Are Reasonable, Fair, and Appropriate Under the Common**
       **Fund Doctrine.**

Class Counsel request that the Court approve reimbursement of their costs
incurred in prosecuting this matter, up to $ 20,000.00, from the Maximum Payment.
Defendants do not oppose this request.  Class Counsel also request that the Court
approve an award of attorneys' fees in the amount of 30% of the Maximum Payment to

1
2
3

Class Counsel, or $1,050,000. Defendants also do not oppose this request. As discussed below, these amounts are fully warranted in this case and are well within the range awarded in similar cases.

4
5
6
7
8
9

The Plaintiff in the settlement of this unpaid wages class action is entitled to payment of attorneys' fees and costs. *See* California Labor Code §§ 218.5, 1194; California Code of Civil Procedure §1021.5(a); *Maria P. v. Riles,* 43 Cal. 3d 1281, 1290-91 (1987); *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983) (attorney fee awards may be justified even where a lawsuit never reached final judgment).

10
11
12
13
14
15
16

Here, Plaintiffs seek an award of Class Counsel's attorneys' fees and costs under the common fund doctrine, which has been recognized by federal courts and is customarily used in awarding fees and costs in settlements of wage and hour class actions. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311.

17
18
19
20
21
22
23
24
25
26
27
28

The common fund doctrine is grounded in the principles of quantum meruit and unjust enrichment. *See* 2 Newberg, §14:6. The doctrine prevents the unjust enrichment of the absent members of the class at the expense of the attorneys and class representative, who have assumed the front line risk of prosecuting the case. *Id.* The common fund – or "percentage" – method offers the advantage of helping to ensure that the fee award will provide an incentive both for attorneys to take on risky cases where the benefits on recovery are dispersed, and to settle the case rather than litigate it fully to increase a "lodestar" award that is solely a function of billable hours, and rife with adverse incentives to protract the case. *Dublin v. E.F. Hutton Group, Inc.* 878 F. Supp 616, 621 (S.D.N.Y. 1995) ("the percentage method offers the advantage of helping to ensure . . . that attorneys will have an incentive to settle the case rather than to litigate it fully in order to increase the lodestar.").

ALEXANDER KRAKOW + GLICK LLP

14

1  In light of the challenges presented to Class Counsel in this case and the closely

2  circumscribed scope of the settlement terms, a thirty percent fee award is appropriate.[1]

3  As summarized in *Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999):

4  No one expects a lawyer whose compensation is contingent on the

5  success of his services to charge, when successful, as little as he would

6  charge a client who in advance of the litigation has agreed to pay for his

7  services, regardless of success. Nor, particularly in complicated cases

8  producing large recoveries, is it just to make a fee depend solely on the

9  reasonable amount of time expanded.

10  Accordingly, Class Counsel's fee request is fair and reasonable given that Class

11  Counsel's effectiveness in prosecuting this case has translated into the following

12  benefits, tangible and intangible, for the Class:

13      (1)    A Settlement of $3,500,000;

14      (2)    Class Members will receive money now rather than waiting a number

15  of years for a settlement or verdict (or worse, not receiving any benefits at all);

16      (3)    The rights of individuals, whose cases would likely not have been

17  individually prosecuted, were upheld;

18  There has been, and will continue to be, an increased awareness on the part of

19

20  [1]Numerous federal courts have awarded attorney fees equal to or higher than 33 1/3

21  percent of the settlement. *See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (1995 U.S. App. LEXIS 2330) (upholding award of 33 1/3% of $12

22  million settlement); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming award of 33% of 14.8 million settlement); *Antonpulos v. North American*

23  *Thoroughbreds, Inc.,* Fed. Sec.L.Rep. (CCH), ¶96,058 (S.D. Cal. 1991) (33 1/3 of $3.1 million); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 146-47 (E.D. Pa

24  2000) (1/3 of $5.97 million); *In re Crazy Eddie Securities Litigation*, 824 F. Supp. 320, 326-327 (E.D.N.Y. 1993) (33.8% of $42 million); *In re Safety Components*

25  *International, Inc.*, 166 F. Supp.2d 72, 109 (D.N.J. 2001) (1/3 of net $4.31 million); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989)

26  (awarding 32.8% of $42 million); *In re Ampicillian Antitrust Litigation*, 526 F.Supp. 494

27  (D.D.C. 1981) (awarding 45% of $7.3 million settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding 36% of the settlement fund).

28

ALEXANDER KRAKOW + GLICK LLP

Motion for Preliminary Approval of Class Action Settlement      Case No. 10-cv-5565-SBA

Class Members and those with whom they associate of their legal rights in the workplace under California law.

Class Counsel therefore requests that the Court grant Plaintiff's request that Class Counsel's costs be reimbursed from the Settlement Payments and that Class Counsel receive thirty percent of the Settlement, or $1,050,000.

## V. THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES.

### A. The Proposed Class Meets All Of The Requirements Of Rule 23(a)

A class action may not be dismissed, compromised, or settled without the approval of the court. *See* Fed. R. Civ. Proc. 23(e). Plaintiff submits that this action meets all of the prerequisites for certification as a class action.

"A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied." *Morton v. Valley Farm Transp., Inc.* (ND. Cal. 2007) 2007 WL 1113999 at 3.; *see also Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1234.[2]

Federal Rule of Civil Procedure 23 ("Rule 23"), paragraph (a), requires that the following four factors must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy. The proposed Class easily meets all of the requirements of Rule 23.

---

[2]It is well established that trial courts should use a lower standard for determining the propriety of certifying a settlement class, as opposed to a litigation class. *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1807 (1996). Here, Defendants contend that class certification is not appropriate if this case were to be litigated. However, Defendants join Plaintiff in agreeing that conditional certification is appropriate, for settlement purposes only, under the lower standard applicable to the certification of settlement classes.

16

ALEXANDER KRAKOW + GLICK LLP

ALEXANDER KRAKOW + GLICK LLP

### 1. Numerosity

Defendant has represented that the number of class members is approximately 136. Morrison Decl., ¶ 26. Joinder of 136 class members would, of course, be impracticable, and thus the numerosity requirement is easily met. *See In re Itel Sec. Litg.*, 89 F.R.D. 104, 111-112 (N.D. Cal. 1981).

### 2. Typicality

To demonstrate typicality, Plaintiff must show that the named party's claims are typical of the class. Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

Here, Plaintiff has suffered the same injury as other class members as a result of the same course of conduct (the failure to be paid overtime wages stemming from Defendants' uniform policy of misclassification). In addition, there are no unique defenses to the Plaintiff. The typicality requirement is satisfied.

### 3. Commonality and Predominance

In *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), the Ninth Circuit made clear that certification of employee misclassification claims is appropriate where there is evidence of centralized control over the job duties of class members. The *Vinole* court identified the types of evidence which demonstrate this centralized control. They include:

- evidence of standardized hierarchy;
- evidence of corporate policies and procedures governing employees; and
- uniform training programs.

*Id.* at 946.

ALEXANDER KRAKOW + GLICK LLP

In this case, Plaintiff believes there is ample evidence of centralized control over the job duties of class members.  For example, Plaintiff contends that all class members, regardless of job title, are subject to Union Bank's Trust Policy Manual, which dictates how employees are to perform their job with respect to the administration of trusts.  The Trust Policy Manual governs most aspects of an employee's job – indeed, there are hundreds of different procedures covered in the Manual.  Significantly, Plaintiff's position is that class members may not deviate from the policies and procedures outlined in the Manual.   Plaintiff further alleges that employees are also subject to numerous checklists pertaining to their job.  There are checklists for opening an account, auditing accounts, disbursing cash, making trades, etc.  Further, the work of class members is subject to formal audits as well as frequent monitoring and review by supervisors and other departments within Union Bank.  Finally, federal banking regulations and other laws proscribe some of the job duties class members must perform when administering trusts[3].

Numerous courts have found the above evidence to be more than sufficient to justify class certification.  *See, e.g., Tierno v. Rite Aid Corp.*, 2006 WL 2535056 at *5-10 (N.D. Cal. 2006) (granting certification of misclassification class in part based on evidence of employer's development of processes controlling most aspects of how the store was run); *Alba v. Papa Johns USA, Inc.*, 2007 WL 953849 at * 10-12 (C.D. Cal. 2007) (granting certification of misclassification class based on evidence that: (1) store managers must complete daily checklists; (2) managers were required to send daily reports to supervisors; (3) there was a common operations manual applicable to all stores; and (4) each store used same computer system); *Campbell v. Pricewaterhouse Coopers, LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008) (certifying class of accountants based in part on standardized job duties);  *Krzesniak v. Cendant Corp.*, 2007 WL

---

[3]/Defendants dispute many of the facts stated above. Defendants dispute that class certification is appropriate for any purpose besides administering this settlement.

18

ALEXANDER KRAKOW + GLICK LLP

1   1795703 at *13-14 (N.D. Cal. 2007) (certification of misclassification class based in part

2   on standardized practices and procedures as to how store manager should perform job).

3          In each of the above cases, the courts acknowledged that there was some

4   variation in the job duties amongst class members.  Nevertheless, class certification was

5   still granted.  This is consistent with the statements made by the Ninth Circuit in *Vinole v.*

6   *Countrywide Home Loans, Inc.* and *In re Wells Fargo Home Mortg. Overtime Pay*

7   *Litigation.*  Both cases cite favorably to the same passage from *Damassia v. Duane*

8   *Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008): "Where...there is evidence that the

9   duties of the job are largely defined by comprehensive corporate policies, district courts

10  have routinely certified classes of employees challenging their classification as exempt,

11  despite arguments about 'individualized' differences in job responsibilities."  *Vinole*, 571

12  F.3d at 946;  *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958-

13  959 (9th Cir. 2009) (emphasis added).[4]

14              **4.      Adequacy**

15         Because Class Members who are not named parties are bound by a

16  judgment, due process is satisfied only where the absent class members' interest are

17  adequately protected by the representative class members.  *Crawford v. Honig,* 37 F.3d

18  485, 487 (9th Cir. 1994).  The test is whether the named plaintiffs have interests that

19  conflict with, or are antagonistic to, the interests of the other class members.  *Mayfield v.*

20  *Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997).  No such conflict of interest exists here.

21  The named Plaintiff has an interest in proving liability against Defendants for each of the

22  claims alleged in the Complaint, and this interest is identical to the interest of each

23

24  [4]The recent Supreme Court case *Walmart Stores, Inc. v. Dukes, et al.*, 131 S.Ct.
    2541(2011) ("*Dukes*") has little or no impact on this case or similar wage and hour
25  class actions.  At worst, *Walmart* has blended the requirements of commonality (Rule
    23(a)(2)) and predominance (Rule 23(b)(3)).  *Vinole* and the cases cited therein found
26  that the proposed classes meet the predominance requirement of Rule 23(b)(3).
    Therefore, *Walmart's* heightened commonality standard will not be a barrier to
27  certification.  *Walmart* does not address certification under Rule 23(b)(3) or what types
    of evidence is sufficient to certify a misclassification case under Rule 23(b)(3).
28

19

absent Class Member.  Further, Class Counsel have significant experience representing classes of employees in wage and hour litigation, and have reached an adequate settlement of this class action.

### B.   Certification of a Collective Action for Purposes of Settlement Is Appropriate.

Plaintiff seeks collective action certification of a nationwide class with respect to her FLSA claims.   The Ninth Circuit has confirmed that a "collective action" under Section 16(b) differs from the Rule 23 "class action." *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir.2007) ("A 'collective action' differs from a class action"); *accord, Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir.2010) ( "[t]he clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under § 216(b)"); *Smith v. T–Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir.2009) (same).  Indeed, the requirements for proceeding as a collective action are less stringent than a class action.  *Ballaris v. Wacker Siltronic Corp.*, 2001 WL 1335809, at * 2 (D.Or. 2001).

Courts certifying a collective actions apply a two tiered approach.  The first tier is the "notice stage," which asks whether the employees are sufficiently similarly situated that a "conditional certification" should be granted, and notice should be sent to prospective plaintiffs under *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).   Plaintiff can meet this burden simply by providing "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652, *2–3 (N.D.Cal. 2006) (internal quotation marks omitted).  This is a "fairly lenient standard" that does not require the court to consider contrary evidence provided by defendant.  *Lewis v. Wells Fargo & Co.*, 2009 WL 3517660 at *3–4 (N.D.Cal. 2009), and *Wynn v. NBC*, 234 F.Supp.2d 1067, 1082 (C.D.Cal.2002).

At the second stage following conclusion of discovery, the court considers factors such as "'(1) the disparate factual and employment settings of the individual plaintiffs; (2)

ALEXANDER KRAKOW + GLICK LLP

20

the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.'" *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D.Cal. 2009).

Collective action treatment is appropriate in this case because:  (1) the claims of each of the class members are the same (failure to pay overtime due to misclassification); (2) each of the class members perform the same basic job function – administering trusts; (3) the duties of class members are largely prescribed by the Trust Policy Manual (which is applicable to all class members), the terms trust document itself, numerous checklists as well other bank policies and federal law; and (4) the work of class members is closely supervised by others in the bank.  Under similar factual circumstances, courts have routinely granted conditional and final collective action certification.  *See Gilbert v. Citigroup, Inc.*, 2009 WL 424320 (N.D.Cal. 2009) (conditionally certifying class of bank employees for overtime based on employee testimony of similar job duties and similar compensation scheme even though (a) employees were reclassified from exempt to non-exempt and brought both misclassification and off the work claims and (b) worked at numerous locations throughout California); *Kress*, 263 F.R.D. at 630-631 (granting conditional certification to associates and senior associates in accounting firm based similar training, audit methodology and professional standards); *Bollinger v. Residential Capital, LLC*, 761 F.Supp.2d 1114, 1120-1121 (W.D. Wash. 2011) (conditional certification of mortgage underwriters based on evidence of similar job duties, universal compensation scheme and similar allegations).

## VI. THE PROPOSED CLASS NOTICE IS APPROPRIATE.

### A. The Class Notice Satisfies Due Process.[5]

The notice plan here entails mailing the notice to all known and reasonably ascertainable Settlement Class members based on records maintained by Defendants.

---

[5]A copy of the Proposed Class Notice is attached hereto as Exhibit "1" to Joint Stipulation.

Motion for Preliminary Approval of Class Action Settlement          Case No. 10-cv-5565-SBA

ALEXANDER KRAKOW + GLICK LLP

Defendants have agreed to provide the addresses for all settlement Class Members.  To the extent any of the addresses are no longer current, a "skip trace" will be conducted to locate the particular class member.  Such notice is more than sufficient to satisfy due process.

The parties believe that the method of notice will prove to be effective.  The parties base this conclusion on the fact that each of the previous mailings to Class Members conducted by the parties resulted in relatively few undeliverable notices.

Given that the addresses of each of the Class Members are available from Defendants' records, the parties do not believe it would be cost effective to employ other methods of notice, such as notice by publication.

## B. The Proposed Class Notice is Accurate and Informative.

The proposed Notice of Settlement provides information on the meaning and nature of the proposed Settlement Class; the terms and provisions of the Settlement; the relief the Settlement will provide Settlement Class members; how Class Members will receive their portion of the settlement proceeds; the application by Plaintiff's counsel for reimbursement of costs and attorneys' fees; the date, time and place of the final Settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting comments and objections.  The Notice clearly distinguishes between how class members may obtain their share of the proceeds with respect to the federal claims they may have and their state law claims.

The Notice of Settlement also fulfills the requirement of neutrality in class notices. It summarizes the proceedings to date, and the terms and conditions of the settlement, in an informative and coherent manner, in compliance with the Complex Manual's statement that "the notice should be accurate, objective, and understandable to class members." *Complex Manual* § 30.211.  The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendants, and recognizes that the Court has not ruled on the merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the Notice of Settlement

complies with the standards of fairness, completeness, and neutrality required of a

settlement class notice disseminated under authority of the Court.  *See* Fed. R. Civ.

P. 23(c)(2); 23(e); *Complex Manual* §§ 30.211, 30.212.

**VIII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.**

The last step in the settlement approval process is the formal hearing, at which

the Court may hear all evidence and argument necessary to evaluate the proposed

Settlement.  At that hearing, proponents of the settlement may explain and describe its

terms and conditions and offer argument in support of settlement approval; members of

the Settlement Class, or their counsel, may be heard in support of or in opposition to the

Settlement Agreement.

DATED:      April 20th, 2012                    ALEXANDER KRAKOW + GLICK LLP

By:      /s/ Michael Morrison
         Michael S. Morrison
         Attorney for Plaintiff,
         LYNN ODRICK individually, on behalf of
         all others similarly situated, and the
         general public.

ALEXANDER KRAKOW + GLICK LLP

Motion for Preliminary Approval of Class Action Settlement                    Case No. 10-cv-5565-SBA

## CERTIFICATE OF SERVICE

I, Michael S. Morrison, an employee of the City of Santa Monica, certify that on April 20, 2012, caused a true and correct copy of the foregoing to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this matter:

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT THEREOF;**

**DECLARATION OF MICHAEL MORRISON;**

**DECLARATION OF LYNN ODRICK;**

**[PROPOSED] ORDER**

| *Counsel for Defendants* | *Co-Counsel for Plaintiffs* |
|---|---|
| Eric M. Steinert, Esq. | Cory H. Hurwitz, Esq. |
| Justin T. Curley, Esq. | Douglas B. Hayes, Esq. |
| SEYFARTH SHAW LLP | Hurwitz Orihuela & Hayes, LLP |
| 560 Mission Street, Suite 3100 | 10 Universal City, 20th Floor |
| San Francisco, California 94105 | Universal City, California 91608 |
| T: 415 397 2823 | F: 415 397 8549 | T: 818 753 2381| F: 818 753 2382 |
| E: esteinert@seyfarth.com | E: chh@hohlawyers.com |
| E: jcurley@seyfarth.com | E: dbh@hohlawyers.com |

April 20, 2012                    ALEXANDER KRAKOW + GLICK LLP

                                        _____/s/_____

                                        MICHAEL S. MORRISON
                                        401 Wilshire Boulevard, Suite 1000
                                        Santa Monica, CA 90401
                                        Attorneys for Plaintiff LYNN ODRICK
                                        individually, on behalf of all others similarly
                                        situated, and the general public